(753 P.2d 1292)

No. 61,269

JERRY LINSEA, *Appellant,* v. BOARD OF COUNTY COMMISSIONERS OF CHASE COUNTY, KANSAS, *Appellee.*

Petition for review denied June 17, 1988.

Opinion filed April 28, 1988.

*Kristin H. Hutchison,* of Perkins, Hollembeak & Wheeler, Chtd., of Emporia, for appellant.

*William L. Fowler,* county attorney, for appellee.

Before BRAZIL, P.J., REES and SIX, JJ.

BRAZIL, J.: Jerry Linsea, a Chase County resident and taxpayer,

appeals the district court's order concluding it had no jurisdiction under K.S.A. 19-223 to review the board of county commissioners' decision to remove the cedar trees from the grounds of the Chase County Courthouse.

In May 1987, the Board of County Commissioners of Chase County, Kansas, (Board) submitted plans to the Kansas State Historical Society calling for the addition or repair of a driveway and some sidewalks and reforestation on the courthouse grounds in Cottonwood Falls. The state historical preservation officer responded that the plans would not violate the restrictive preservation covenant covering the property under the state historical preservation law. Sometime before July 27, the Board apparently decided to go ahead with the plans.

On July 27, Jerry Linsea obtained a temporary restraining order which prevented the Board from cutting or harming any trees on the grounds. Four days later, the Board moved to vacate the order and dismiss Linsea's action because the Board had complied with a statute requiring review by the state historical preservation officer (K.S.A. 1987 Supp. 75-2724), Linsea had no standing to pursue the action, and no statute authorized the action. Linsea then amended his pleading to include an appeal under K.S.A. 19-223, seeking to overturn the Board's decision as arbitrary, capricious, and not supported by the evidence. The district court heard the Board's motion on August 12.

Among other things, the court found the Board's decision to cut down the cedar trees was "legislative, administrative, and discretionary in nature." The court noted K.S.A. 19-223 provides an appeal process for people aggrieved by the Board's decisions and *Gonser v. Board of County Commissioners*, 1 Kan. App. 2d 57, 562 P.2d 102 (1977), had allowed review of "an administrative and discretionary decision" and had not been overruled. The court nevertheless ruled: "The *Gonser* holding is an aberration and sufficient case law exists to support a finding that K.S.A. 19-223 only allows for appeals of decisions that are judicial or quasi-judicial in nature." The court concluded it had no jurisdiction and dismissed Linsea's appeal. Linsea appeals.

The trial court chose to consider the nature of the Board's action to which Linsea was objecting. Then, based upon its interpretation of Kansas case law, the court found that it lacked

jurisdiction to review the Board's decision since that decision was legislative, administrative, and discretionary in nature.

Neither Linsea nor the Board disputes the trial court's finding that the Board's action was administrative and not judicial or quasi-judicial. However, in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 450, 436 P.2d 828 (1968), the court recognized a limited scope of review of administrative actions.

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, the tribunal acted fraudulently, arbitrarily or capriciously, whether the administrative order is substantially supported by evidence, and whether the tribunal's action was within the scope of its authority."

The court noted that because the action being reviewed was administrative or legislative, rather than judicial, any wider scope of review would violate the separation of powers doctrine. 200 Kan. at 450.

In *Brinson v. School District*, 223 Kan. 465, 576 P.2d 602 (1978), after noting at page 467 the right to appeal is strictly statutory, the court rejected an argument based on *Gonser* with this analysis:

"The scope of review in each case must be determined first from the legislative authority set forth in the statute which authorizes such appeal. If a quasi-judicial function is to be reviewed the legislature in such case may authorize either a limited review or a *de novo* review. If a limited review is all the legislature has authorized this scope of review applies to both administrative and quasi-judicial acts. The statute authorizing review in *Gonser* was K.S.A. 19-223. The Court of Appeals concluded that the trial court correctly decided the appeal under a limited scope of review because of the separation of powers doctrine. The action of the board of county commissioners on review was administrative and discretionary in nature . . . ." 223 Kan. at 471.

*Gonser* and *Brinson* indicate this limited scope of review constitutes a proper judicial review of nonjudicial actions, so K.S.A. 19-223 could authorize the review Linsea seeks. However, on further analysis we conclude that the trial court was correct but for the wrong reason.

"The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason. *Arensman v. Kitch*, 160 Kan. 783, 792, 165 P.2d 441 (1946). The question for our answer is whether the district court decision was correct, not whether the grounds upon which it professed to proceed are tenable. *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 283, 262 P.2d

808 (1953)." *City of Overland Park v. Barnett*, 10 Kan. App. 2d 586, 596, 705 P.2d 564 (1985) (Rees, J., concurring).

Linsea's amended application for a temporary restraining order and appeal alleged that he was a citizen and taxpayer of Chase County, Kansas, and that he was aggrieved by the Board's decision which affected his interests as a taxpayer and in the historical and aesthetic appreciation of the courthouse and its environment.

Is Linsea's status as a Chase County citizen and taxpayer sufficient to confer standing to bring this action? We think not.

A recent discussion of standing appears in *Harrison v. Long*, 241 Kan 174, 176-77, 734 P.2d 1155 (1987). In that case the defendant, Dr. Long, was sued for malpractice, and his insurer and the Kansas Health Care Stabilization Fund settled with the claimant. 241 Kan. at 175. The doctor objected to the settlement and, when the court approved the settlement, alleged the statute which permitted the Fund to settle despite his objections was unconstitutional. 241 Kan. at 175. The doctor claimed the settlement caused his Fund surcharge to increase, injured his reputation at local hospitals, and would have to be reported on future malpractice insurance applications. 241 Kan. at 177. The court stated:

> "Standing has been called one of the most amorphous concepts in the entire domain of public law. Annot., 50 L. Ed. 2d 902, 904. The United States Supreme Court has stated that, in its constitutional dimension, standing imparts justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III of the U.S. Constitution. The court has emphasized that this is the threshold question in every federal case determining the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975).
>
> "Standing is a question of whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Warth v. Seldin*, 422 U.S. at 498-99. 'Standing to sue' means that a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. *Dutoit v. Board of Johnson County Comm'rs*, 233 Kan. 995, 1003, 667 P.2d 879 (1983)." 241 Kan. at 176.

The court then found that Dr. Long had a sufficient stake in the justiciable controversy to confer standing.

However, as Linsea points out in his letter brief submitted after argument, Dr. Long did not have the benefit of proceeding

under a statute that conferred standing. In the present case, standing is conferred by K.S.A. 19-223, which provides in part: "Any person who shall be aggrieved by any decision of the board of commissioners may appeal from the decision of such board to the district court of the same county." Standing is conferred upon any aggrieved person, and the question then becomes whether an individual citizen and taxpayer of Chase County is necessarily an aggrieved person under the statute.

In *Fairfax Drainage District v. City of Kansas City*, 190 Kan. 308, 374 P.2d 35 (1962), the drainage district appealed an order of the board of county commissioners which enlarged the boundaries of the city. The appeal was authorized by a statute that read:

" 'Any owner of land sought to be taken into the limits of a city under the provisions of this act, who shall be aggrieved by the decision of the board of county commissioners may appeal to the district court of the same county in the manner and method as now provided by section 19-223, Revised Statutes of 1923.' " 190 Kan. at 314 (quoting G.S. 1949, 12-502a).

The court quoted with approval from the district court's decision:

" 'A party is aggrieved whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected by the order. The term refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of some burden or obligation. In this sense it does not refer to persons who may happen to entertain desires on the subject, but only to those who have rights which may be enforced at law and whose pecuniary interest may be affected.' " 190 Kan. at 314-15.

Absent an allegation of a special injury not suffered by other citizens and taxpayers of Chase County, we conclude that Linsea has not sufficiently alleged he was an aggrieved person under K.S.A. 19-223.

The district court's order of dismissal is affirmed.